United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HOJAT SEYED HOSSEINI, *et al.*,

    Plaintiffs,

    v.

WELLS FARGO BANK, N.A.,

    Defendant.

                                          /

No. C-13-02066 DMR

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

    This matter comes before the court on Defendant Wells Fargo Bank, N.A.'s motion to dismiss Plaintiffs' first amended complaint ("FAC"). The court held a hearing on August 8, 2013, during which the parties were given an opportunity to present oral argument. For the reasons below, Defendant's motion to dismiss is GRANTED and Plaintiffs' FAC is dismissed with leave to amend.

**I. Background**

    On August 31, 2006, Plaintiffs Modesto Juarez and Dora Hernandez recorded a deed of trust on real property located at 3790 Hillcrest Road, El Sobrante, California ("the property"), securing a note in favor of Wells Fargo Bank, N.A. ("Wells Fargo") for $300,000. (Def.'s Req. for Judicial Notice in Supp. of Mot.[1] ("RJN"), Ex. A.) Fidelity National Title Insurance Company ("Fidelity")

---

[1] The court grants Defendant's request for judicial notice of Exhibits A-E, the deed of trust, corporate assignment of deed of trust, notice of default, substitution of trustee, and notice of trustee's sale recorded in connection with Plaintiffs' loan. They are true and correct copies of official public records of the Contra Costa County Recorder's Office, and their authenticity is capable of accurate and

1 was named as the trustee on the deed of trust. (RJN Ex. A.) Defendant is the servicer of the loan.
2 (FAC ¶ 9.) On September 21, 2011, Defendant recorded a "Corporate Assignment of Deed of
3 Trust" which stated that Defendant had transferred the beneficial interest in the loan to "US Bank
4 National Association, as trustee for CitiGroup Mortgage Loan Trust Inc., Mortgage Pass-Through
5 Certificates, Series 2007-AR8" ("US Bank"), a securitized trust. (FAC ¶ 14; RJN Ex. B.) However,
6 according to Plaintiffs, the securitized trust was dissolved before 2011 and ceased acquiring
7 mortgage loans in 2007. (FAC ¶¶ 15-16.) Accordingly, Plaintiffs allege, the securitization process
8 failed and the securitized trust never obtained the beneficial interest in the loan. (FAC ¶ 17.)

9 In or around September 2012, Plaintiff Hojat Seyed Hosseini[2] mailed a complete first-lien
10 loan modification application to Defendant, which confirmed receipt thereof. (FAC ¶ 18.)

11 On October 2, 2012, Defendant executed a substitution of trustee "as servicing agent" for US
12 Bank, whereby it replaced Fidelity as trustee under the deed of trust with NBS Default Services, Inc.
13 ("NBS"). (RJN Ex. D.) The substitution of trustee was recorded on November 1, 2012. (RJN Ex.
14 D.) On October 2, 2012, at Defendant's direction, NBS executed a Notice of Default alleging that
15 Plaintiffs had defaulted on the loan and that the amount due on the note was $10,039.48. (FAC ¶ 19;
16 RJN Ex. C.) The Notice of Default was recorded on October 5, 2012. (RJN Ex. C.)

17 Plaintiffs allege that they supplied Defendant with information it requested for the loan
18 modification process starting in December 2012 and continuing through February 2013. (FAC ¶
19 20.) However, on January 22, 2013, NBS executed a Notice of Trustee's Sale setting the trustee's
20 sale for February 8, 2013. (FAC ¶ 21; RJN Ex. E.) On or about March 19, 2013, Plaintiff Hosseini
21 received correspondence from Defendant requesting further information for the modification
22 process. (FAC ¶ 22.) No trustee's sale of the property has taken place.

23 On March 28, 2013, Plaintiff Hosseini filed a complaint against Defendant in Contra Costa
24 County Superior Court alleging eight causes of action. Defendant removed the case to federal court

---

26 ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed.
27 R. Evid. 201(b). Plaintiffs did not object to the request for judicial notice.

28 [2] At the hearing, Plaintiffs' counsel stated that Plaintiff Hosseini is Plaintiffs' Juarez and Hernandez's son in law. Hosseini is not a borrower on the deed of trust. (RJN Ex. A.)

United States District Court
For the Northern District of California

on May 6, 2013, and on May 13, 2013, filed a motion to dismiss Plaintiff's complaint. [Docket No. 6.] On May 30, 2013, Plaintiffs Hosseini, Juarez, and Hernandez filed a first amended complaint, alleging causes of action for 1) wrongful foreclosure; 2) violation of California Civil Code section 2924.17(b); 3) violation of California Civil Code section 2924.18; 4) fraud; 5) promissory estoppel; 6) negligent misrepresentation; 7) negligence per se; and 8) violation of California Business and Professions Code section 17200 (the Unfair Competition Law, or "UCL"). [Docket No. 14.] Defendant's present motion to dismiss followed. [Docket No. 15.]

## II. Legal Standards

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted). When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

"[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict

facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III. Discussion

#### A.   Plaintiffs' Securitization Theory

At oral argument, counsel confirmed that all of Plaintiffs' causes of action are premised upon two theories. The first is that Defendant lacked standing to initiate foreclosure, resulting from a failed securitization of the underlying loan. Plaintiff's second theory is that Defendant engaged in unlawful "dual-tracking" by proceeding with a foreclosure while simultaneously considering the borrowers' eligibility for a loan modification.

Plaintiffs' "failed securitization" theory forms the factual basis, in whole or in part, for many of Plaintiff's claims: wrongful foreclosure, recording of inaccurate title documents, fraud, negligence per se, and violation of the UCL. (FAC ¶¶ 34, 39, 50-52, 79-81, 85.) For this reason, the court addresses this theory at the outset. Plaintiffs allege that the 2011 assignment of the loan to a securitized trust failed because the trust ceased acquiring mortgage loans in 2007 and was dissolved before 2011, the year Defendant recorded the "Corporate Assignment of Deed of Trust." (FAC ¶¶ 15-16.) As a result, the securitized trust never obtained the beneficial interest in the loan and thus US Bank lacked authority to execute the substitution of trustee. (*See* Pls.' Opp'n 5, citing Cal. Civ. Code § 2934a(a)(1)(A) (requiring a substitution of trustee to be executed and acknowledged by "all of the beneficiaries under the trust deed, or their successors in interest").) Plaintiffs thus argue that the securitization of the loan was either flawed, or never took place. As NBS was improperly substituted as trustee, its recording of the Notice of Default and Notice of Trustee's Sale were improper.[3] Plaintiffs further allege that due to the failed securitization, Defendant no longer holds

---

[3] Plaintiffs also argue that in October 2009, Defendant purported to substitute First American Loanstar Trustee Services ("First American") as trustee under the deed of trust in place of Fidelity, and that the substitution was executed by a robo-signer and was invalid. Further, they argue that the October 2012 substitution of trustee improperly attempted to substitute NBS in place of Fidelity, even though First American was the trustee under the deed of trust. (Pls.' Opp'n 5; RJN Ex. D.) The court will not consider these assertions. They are not alleged in the FAC and the alleged October 2009 substitution of First American was neither attached to the FAC nor submitted in connection with Defendant's RJN. Moreover, the court notes that Plaintiffs neither explained how the identification of the wrong prior trustee in a substitution of trustee invalidated the substitution nor provided any support for such a theory.

4

the beneficial interest in the loan, is not the original or substituted trustee, and is not the designated agent of the holder of the beneficial interest. (FAC ¶ 34.)

Claims based upon this theory must be dismissed because Plaintiffs fail to allege how they have standing to challenge the validity of the securitization process. As recognized by numerous courts, Plaintiffs lack standing to challenge the process by which their mortgage was securitized because they were not parties to any agreements that governed the securitization of the note. *See Junger v. Bank of Am., N.A.*, No. CV 11-10419 CAS (VBKx), 2012 WL 603262, at *1, 3 (C.D. Cal. Feb. 24, 2012) (rejecting allegations that "defendants failed to adhere to the January 31, 2006 deadline for transferring the note as required by the pool servicing agreement ("PSA") that governed the securitization of the note" and holding that plaintiff lacked standing to challenge securitization of loan because he was not party to the PSA); *Almutarreb v. Bank of New York Trust Co., N.A.*, No. C-12-3061 EMC, 2012 WL 4371410, at *2 (N.D. Cal. Sept. 24, 2012) (holding that plaintiffs "lack standing to challenge the validity of the securitization process, including whether the loan transfer occurred outside the temporal bounds prescribed by the PSA."); *see also Sami v. Wells Fargo Bank*, No. C 12-00108 DMR, 2012 WL 967051, at *5-6 (N.D. Cal. Mar. 21, 2012) (collecting additional cases).[4] Plaintiffs do not allege any other infirmities in the assignment process regarding their loan, nor do they allege "a specific factual basis that shows that the foreclosure was not initiated by the correct party." *Sargent v. JPMorgan Chase Bank, N.A.*, No. C 13-01690 WHA, 2013 WL 3878167, at *3 (N.D. Cal. Jul. 25, 2013) (quoting *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1156 (2011) (quotation marks omitted)). They also do not allege that they are not in default on the loan. Accordingly, because Plaintiffs' securitization theory fail as a matter of law, claims premised on that theory must be dismissed. The court will address each claim, as well as Plaintiffs' dual tracking theory, below.

---

[4] In its opposition, Plaintiff cites *Naranjo v. SBMC Mortg.*, No. 11-cv-2229-L(WVG), 2012 WL 3030370, at *3 (S.D. Cal. Jul. 24, 2012), where the court allowed claims based on a similar challenge to go forward. However, as stated by the court in *Almutarreb*, this opinion is not persuasive because it fails to explain how the plaintiff had standing to challenge the agreement that governed the alleged securitization of the loan. *See Almutarreb*, 2012 WL 4371410, at *2 n.1; *see also Lyshorn v. J.P.Morgan Chase Bank, N.A.*, No. C 12-05490 JSW, 2013 WL 792632, at *4 (N.D. Cal. Mar. 4, 2013) (same).

### B. Wrongful Foreclosure

Plaintiffs' first cause of action, while titled "Wrongful Foreclosure," is actually based upon an alleged violation of California Civil Code section 2924(a)(6). That statute provides:

> No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest.

Cal. Civ. Code § 2924(a)(6). This claim rests solely upon Plaintiffs' theory that Defendant lacks standing to initiate the foreclosure process due to the failure of the assignment of the loan to the securitized trust. (FAC ¶¶ 32-34.) Accordingly, this claim cannot proceed for the reasons described above and is dismissed with prejudice.

### C. California Homeowners' Bill of Rights Claims

Plaintiffs' second and third causes of action are based upon California Civil Code sections 2924.17(b) and 2924.18, provisions of the recently enacted California Homeowners' Bill of Rights ("HBR"). (FAC ¶¶ 37, 42.) The Governor signed HBR into law on July 11, 2012, and it took effect on January 1, 2013. Ch. 86, Stats. 2012.

#### 1. California Civil Code Section 2924.17(b)

Section 2924.17(b) prohibits the practice of "robo-signing," in which mortgage servicers execute foreclosure documents without "substantiat[ing] the borrower's default and the right to foreclose." Cal. Civ. Code § 2924.17(b); *Michael J. Weber Living Trust v. Wells Fargo Bank, N.A.*, 13-CV-00542-JST, 2013 WL 1196959, at *4 (N.D. Cal. Mar. 25, 2013). Plaintiffs' section 2924.17(b) claim alleges that "the title documents recorded . . . by Defendant Wells Fargo are inaccurate as alleged herein." (FAC ¶ 39.) As this claim is based solely upon Plaintiffs' "failed securitization" theory, it is dismissed.

#### 2. California Civil Code Section 2924.18

Section 2914.18 prohibits the practice of dual-tracking, which prevents initiation of foreclosure proceedings while considering a borrower's eligibility for a loan modification. Cal. Civ. Code § 2924.18(a)(1). Plaintiffs' third cause of action is for violation of California's ban on dual-tracking. (FAC ¶ 42.) Plaintiffs allege that in September 2012, Plaintiff Hosseini mailed a complete

first-lien loan modification application to Defendant. (FAC ¶ 18.) Starting in December 2012 and continuing through February 2013, Plaintiffs provided Defendant with information it requested for the loan modification process, and in March 2013, Plaintiff Hosseini received correspondence from Defendant requesting further information. (FAC ¶¶ 20, 22.) However, Defendant recorded a Notice of Trustee's Sale in January 2013, even though the loan modification process was ongoing. (FAC ¶ 21.) Defendant argues that this claim fails because Plaintiff Hosseini is not a party to the loan and therefore his submission of a loan modification application cannot form the basis for an action under section 2924.18.[5]

Section 2924.18 provides:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification.

Cal. Civ. Code § 2924.18(a)(1). Section 2924.19 provides that only "a borrower may bring an action for injunctive relief to enjoin a material violation" of section 2924.18 if a trustee's deed upon sale has not been recorded; it does not authorize any other persons to bring suit. Cal. Civ. Code § 2924.19(a)(1). California Civil Code section 2920.5(c)(1) defines borrowers as "any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer." Cal. Civ. Code § 2920.5(c)(1). The FAC alleges that Plaintiffs Hosseini, Juarez, and Hernandez are each "borrowers" under California Civil Code section 2920.5(c)(1). (FAC ¶ 6.) However, this allegation is contradicted by the judicially-noticeable deed of trust, which names only Plaintiffs Juarez and Hernandez as trustors-borrowers. (RJN Ex. A.) Therefore, as Plaintiff Hosseini is

---

[5] Defendant also argues for the first time in its reply brief that HBR's anti-dual-tracking provision, which went into effect January 1, 2013, is not retroactive; therefore, Plaintiff Hosseini's submission of a loan modification application in September 2012 does not fall within the statute. (Def.'s Reply 5.) The court will not consider this argument as it was not raised in Defendant's motion. In any event, Plaintiffs alleged that they supplied Defendant with information in support of the loan modification application beginning in December 2012 and continuing through February 2013, after HBR went into effect. (FAC ¶ 20.)

7

neither a "mortgagor or trustor," he is not a borrower under HBR and may not bring an action pursuant to section 2924.18.

Even though this claim was brought on behalf of all three Plaintiffs, Defendant argues that Plaintiff Hosseini's submission of the loan modification application was "a futile act," as he was a third party to the loan, and thus it cannot form the basis for a section 2924.18 claim. In response, Plaintiffs argue that the "loan modification application that was submitted was completed by Plaintiffs Juarez and Hernandez, and Plaintiff Hosseini simply mailed the application." (Pls.' Opp'n 9.) Further, they point to their allegations that starting in December 2012, "Plaintiffs" supplied Defendant with the information it requested for the loan modification. (*See* FAC ¶ 20.)

The FAC does not clearly plead that the loan modification application submitted by Hosseini in September 2012 was on behalf of Juarez and Hernandez. At the hearing, Plaintiffs' counsel reiterated the assertion that Hosseini merely mailed the loan modification application, and that it was submitted on behalf of "all three plaintiffs." Therefore, the court grants leave to amend to clearly plead that Plaintiffs Juarez and Hernandez -- the actual borrowers -- submitted complete loan modification information before Defendant initiated foreclosure proceedings. The claim is dismissed with prejudice as to Plaintiff Hosseini.

**D. Fraud**

Plaintiffs' fraud claim is based on the theory that Defendant lacks standing to initiate foreclosure proceedings due to the failure of the assignment of the loan to the securitized trust. (FAC ¶¶ 50, 51.) Therefore, this claim fails for the reasons described above.

To the extent this claim is based upon any other conduct, the court finds that Plaintiffs' fraud allegations do not satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). In order to recover under fraud based claims, a "party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007) (*quoting Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of

1   fraud must include "the who, what, when, where, and how" of the misconduct charged). To state a
2   claim for fraud, Plaintiffs must allege (1) misrepresentation; (2) knowledge of falsity (scienter); (3)
3   intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage. *Kearns*
4   *v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Vague or conclusory allegations are
5   insufficient to satisfy Rule 9(b)'s particularity requirement. *Moore v. Kayport Package Express,*
6   *Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). To comply with Rule 9(b), fraud allegations must be
7   specific enough to give defendants notice of the particular misconduct that is alleged to constitute
8   the fraud so that they can defend against the claim. *Bly-McGee v. Cal.*, 236 F.3d 1014, 1019 (9th
9   Cir. 2001). As Plaintiffs' fraud claim is not pleaded with the requisite particularity, it is dismissed
10  with leave to amend, as long as the amended claim is not based on a securitization theory.

### E. Promissory Estoppel

Plaintiffs' fifth cause of action is for promissory estoppel and is based on their attempted loan modification. Plaintiffs allege that they relied on Defendant's statements "that [Defendant] would provide Plaintiffs with a good faith evaluation of the loan modification application," and that Plaintiffs "refrained from obtaining other alternatives to remedy [the] situation." (FAC ¶¶ 62, 63.) However, Defendant breached this "promise" when it initiated the foreclosure process. (FAC ¶¶ 20, 22; *see also* Pls.' Opp'n 12.)

A claim for promissory estoppel requires 1) a clear and unambiguous promise; 2) reliance by the party to whom the promise was made; 3) that the reliance be reasonable and foreseeable; and 4) injury caused by the reliance. *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976). "The purpose of this doctrine is to make a promise that lacks consideration (in the usual sense of something bargained for and given in exchange) binding under certain circumstances." *Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc.*, 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010). The only promise made by Defendant that Plaintiffs identify is the statement that it would provide a "good faith evaluation" of the loan modification application. Although this representation implies something about the future, it is not a clear, unambiguous, enforceable promise that would support a promissory estoppel claim. A promise to evaluate an application in good faith is not a promise of an actual modification. *See Macris v. Bank of Am., N.A.*, No. CV F

1  11-1986 LJO SKO, 2012 WL 273120, at *8 (E.D. Cal. Jan. 30, 2012) (dismissing promissory estoppel claim where there was no "clear promise of a loan modification" on which plaintiffs detrimentally relied); *see also Lindberg v. Wells Fargo Bank N.A.*, No. C 13-0808 PJH, 2013 WL 3457078, (N.D. Cal. Jul. 9, 2013) (dismissing claim for promissory estoppel based on promise of loan modification "with reasonable terms"). Therefore, Plaintiffs' promissory estoppel claim is dismissed with leave to amend to allow Plaintiffs the opportunity to allege a sufficiently "clear and ambiguous" promise.

### F. Negligent Misrepresentation

Plaintiffs' sixth cause of action is for negligent misrepresentation. Although Plaintiffs allege that "Defendants [sic] made untrue representations of material fact to Plaintiffs," they do not identify the specific representations. (FAC ¶ 70.) However, it appears this claim is based upon Defendant's statement that it would provide a good faith evaluation of their loan modification application. (*See* FAC ¶ 74.)

Under California law, to state a claim for negligent misrepresentation, Plaintiffs must allege that Defendant made: (1) a misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage. *Glenn K. Jackson Inc. v. Roe,* 273 F.3d 1192, 1201, n.2 (9th Cir. 2001). In addition, Plaintiffs must allege the existence of a duty of care between themselves and Defendant. *See Paz v. California*, 22 Cal. 4th 550, 557-58 (2001) (the elements of negligence cause of action under California law are (1) existence of duty to exercise due care, (2) breach of duty), (3) causation, and (4) damages); *Lindberg*, 2013 WL 3457078 (citing *Ditto v. McCurdy*, 510 F.3d 1070, 1078 (9th Cir. 2007)).

This claim fails for two reasons. First, the claim is subject to Rule 9(b)'s particularity requirements. *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (noting that "[i]t is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."). As noted above, the allegations must be specific enough to give Defendant notice of the particular misconduct that is

alleged to constitute the fraud so that it can defend against the claim. *See Bly-McGee*, 236 F.3d at 1019. Here, Plaintiffs do not identify the specific representations that Defendant made to them. There is no account of who made the representation or when and where it was made, nor are there any details about the specific content of the alleged misrepresentation. Therefore, it falls short of the Rule 9(b) pleading standard.

Second, Plaintiffs have not alleged facts that support a duty of care. As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n,* 231 Cal.App.3d 1089, 1095-96 (1991) (citations omitted). An exception to this rule arises "when the lender 'actively participates in the financed enterprise beyond the domain of the usual money lender.'" *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1153 (E.D. Cal. 2010) (quoting *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980) (internal quotation marks omitted). In their opposition, Plaintiffs argue that by undertaking the loan modification process and requesting and accepting documentation from Plaintiffs Defendant "undertook a duty of care." (Pls.' Opp'n 14.) However, "[n]umerous cases have characterized a loan modification as a traditional money lending activity" and concluded that a financial institution owes no duty of care to a borrower in the loan modification process. *Settle v. World Sav. Bank, F.S.B.*, No. ED CV 11-00800 MMM, 2012 WL 1026103, at *8 (C.D. Cal. Jan. 11, 2012) (dismissing negligent misrepresentation claim where plaintiff failed to plead any facts indicating that "defendant went beyond the typical role of a money lender"); *see also Armstrong v. Chevy Chase Bank, FSB*, No. 4:11-cv-05664 EJD, 2012 WL 4747165, *4-5 (N.D. Cal. Oct. 3, 2012) (dismissing negligence claim based upon loan modification process where plaintiff had not alleged plausible theory of negligence; noting that renegotiation "is one of the key functions of a money lender"); *Morgan v. U.S. Bank Nat'l Ass'n*, No. C 12-03827 CRB, 2013 WL 684932, at *3 (N.D. Cal. Feb. 25, 2013) (same).

Here, Plaintiffs have failed to plead any facts indicating that Defendant went beyond the typical role of a money lender in connection with the loan modification process. Therefore, this claim must be dismissed on this basis as well.

11

### G. Negligence Per Se

Plaintiffs' seventh cause of action alleges that Defendant was negligent per se when it violated California Civil Code sections 2924(a)(6), 2924.17(b), and 2924.18. (FAC ¶ 79.) As the court has concluded that Plaintiffs have failed to state a claim under sections 2924(a)(6) and 2924.17(b), the negligence per se claim based on those sections must be dismissed.

Negligence per se is an evidentiary presumption that a party failed to exercise due care if: (1) it violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to a person or property; (3) the death or injury resulted from an occurrence of the nature the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his or her person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. Cal. Evid. Code § 669. This doctrine does not establish a cause of action distinct from negligence; instead, "an underlying claim of ordinary negligence must be viable before the presumption of negligence of Evidence Code section 669 can be employed." *Spencer v. DHI Mortg. Co., Ltd.*, 642 F. Supp. 2d 1153, 1162 (E.D. Cal. 2009) (citing *Cal. Serv. Station & Auto Repair Ass'n v. Am. Home Assurance Co.*, 62 Cal. App. 4th 1166, 1178 (1998)). Therefore, as Plaintiffs have not adequately pleaded a duty of care owed them by Defendant, Plaintiffs' negligence per se claim based upon dual tracking fails. Accordingly, this claim is dismissed.

### H. Unfair Competition Law Claim

Plaintiffs' final cause of action is for violation of the UCL. The UCL prohibits unfair competition, which is defined as, inter alia, "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiffs allege that Defendant engaged in fraudulent business practices by misleading them about the identity of the beneficiary. (FAC ¶ 85.) They also allege that Defendant engaged in unlawful business practices based on their alleged violations of the HBR statutes, (FAC ¶ 86), and engaged in unfair business practices when they violated the laws and legislative policies designed to prevent foreclosure, (FAC ¶ 87).

To the extent Plaintiffs' fraudulent business practices claim is based upon the alleged failure of the assignment of the loan to the securitized trust, it is dismissed as discussed above. The

unlawful business practices claim fails for the same reason, and therefore may not form the predicate for a UCL cause of action, with one exception. Plaintiffs' claim based on dual-tracking may be an appropriate predicate offense for a UCL claim, assuming Plaintiffs are able to clarify the underlying dual-tracking facts as discussed above.

However, this sole remaining UCL claim fails for another reason. Defendant argues that Plaintiffs lack standing to bring the UCL claim because they have not alleged that they suffered damages and cannot do so as no foreclosure sale has taken place. *See Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 859 (2010) (holding a UCL plaintiff must plead injury-in-fact and causation in order to state a claim). Plaintiffs make the conclusory allegation that they "were injured in fact and lost money or property as a result" of Defendant's "practices." (FAC ¶ 88.) However, the only specific allegation Plaintiffs make regarding damages is that they "spent money in improving" the property. (FAC ¶ 64.) Plaintiffs do not allege *how* Defendant's alleged violation of the dual-tracking law caused an injury-in-fact. Accordingly, Plaintiffs' UCL claim is dismissed with leave to amend.

### IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiffs' FAC is dismissed with leave to amend to address the specific deficiencies identified in this order, but not to add new claims or theories. Plaintiffs' claims pursuant to California Civil Code sections 2924(a)(6) and 2924.17(b), negligent misrepresentation, and negligence per se claims are dismissed with prejudice. Plaintiffs' California Civil Code section 2924.18, fraud, promissory estoppel, and UCL claims are dismissed with leave to amend. Plaintiffs shall file any amended complaint within 14 days of the date of this order.

IT IS SO ORDERED.

Dated: August 9, 2013

_____
DONNA M. RYU
United States Magistrate Judge